514-0231, People v. Phillips, counsel for the appellant, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors. May I please report, counsel? My name is Richard Whitney, and I am representing the petitioner, appellant Julius Phillips, in this clause. Mr. Phillips appeals the dismissal of his post-conviction petition at the second stage on grounds of untimeliness, which this court reviews de novo. We present three alternative grounds for reversing the trial court's ruling. First, simply stated, the petition was not untimely under the version of the Post-Conviction Petition Act that was in effect in 1997 when the petition was filed. Both parties and the court applied incorrect facts to the incorrect law and not surprisingly arrived at an incorrect conclusion, one that contradicted binding precedent of our Supreme Court. Secondly, even assuming arguendo that the petition was untimely on the grounds that the State contends by four days or less, the court law erred in failing to consider Mr. Phillips' claim that any late filing was not due to his culpable negligence. And then third, Mr. Phillips was denied the reasonable assistance of post-conviction counsel, where his attorney, who sat on the case for an astonishing 16 years before filing his amended petition, failed to realize that his client had filed a petition for legal appeal, failed to realize that his client had submitted an affidavit showing lack of culpable negligence, made no cognizable legal argument to rebut the untimeliest claim, and then finally, when he did file an amended petition, it was filled not only with completely unsupported claims, but one claim that he himself had already discredited before the court and another one that was undermined by the affidavit he attached to his own amended petition. In sum, there was culpable negligence aplenty in this case, but it wasn't on the part of Mr. Phillips. If this type of representation can be considered reasonable, then one is left to wonder to what depths of ineptitude an attorney's performance must sink in order to be deemed unreasonable. Finally, Mr. Phillips also requests a small correction to the minimus in this clause of seven days to accurately reflect the time actually served in pre-sentence detention. For that relief, this court need only follow its own civil precedent from people he ran. With respect to the core untimeliness argument, the court below was wrong about the facts and wrong about the law and came to the wrong conclusion. It was wrong about the facts because the trial court dismissed Mr. Phillips' petition on the ground that it was not filed within six months from the date for filing a certiorari petition. This was simply factually incorrect. Mr. Phillips had filed his petition on September 3, 1997, while his petition for leave to the Illinois Supreme Court was still pending. That petition was not denied until December 3, 1997. Therefore, under the 2014 version of the statute that the court was applying, Mr. Phillips had 90 days after the entry of that order to file a certiorari petition, and then he had another six months after that in order to file his post-conviction petition. So in the facts, the court below was wrong by exactly one year. The court was also wrong about the law. The parties applied the wrong version of the statute and failed to apply binding appellate court and Supreme Court precedent. Contrary to what transpired in the court below, the parties now agree that it was indeed the 1997 version of the Post-Conviction Petition Act that should have governed the timeliness issue in this case. Under the 1997 version, there were basically three possible deadlines or limitations period. One would have been more than six months after the denial of the petition for leave to appeal, or more than 45 days after the defendant filed his or her brief before the Illinois Supreme Court, neither of which would have applied to Mr. Phillips, or three years from the date of conviction. So since the first two clearly don't apply to Mr. Phillips under the facts of this case, the question then becomes, well, what does it mean three years from the date of conviction? What is the date of conviction? Well, the answer was supplied by the appellate court in People v. Ivey and subsequently by the Illinois Supreme Court in People v. Hager. And basically what these two courts held is that the date of conviction does not merely mean the date of sentencing. If it goes up on appeal, the question becomes, when is it resolved by the appellate process? It is only when it is resolved by the appellate process and there is finality to the determination of the conviction that that becomes the trigger date of conviction. So following Ivey and following Hagel, Mr. Phillips' petition was clearly timely filed. His conviction did not become final until it was affirmed by the appellate court on September 27, 1996. Three years from date of conviction would have been September 27, 1999. He filed his petition on September 3, 1997. So he was well in front of that one. He was also well in front of the deadline for six months after the denial of his petition for leave of appeal. Clearly under the law that existed in 1997, his petition was timely filed. The court alone heard, and it heard because it was misled by the state basically and Mr. Steele, his own attorney, not realizing that he had filed a petition for leave of appeal and that they should be looking at the 1997 law, not the 2014 version. Therefore, I would submit to the court that we really don't need to get into whether there was a lack of culpable negligence, but of course I'd be happy to answer any questions regarding that second ground. I would like to focus a little bit more, however, on the third ground for reversing the trial court's decision here because the state has made an argument that, well, reviewing this, you know, Mr. Phillips clearly didn't raise a viable constitutional claim, so you may affirm on that ground instead. Well, this court may not affirm on that ground if Mr. Phillips did not receive reasonable assistance of counsel. It's well settled now from the Illinois Supreme Court decision in Suarez that where post-conviction counsel failed to fulfill the duties of consultation, examining the record, and amending the pro se petition, that remand is required regardless of whether the underlying claims had merit. We have to – this court has to enforce the rule – compliance with Rule 651C and the standard of reasonable assistance of counsel. Here, Attorney Steele's performance failed in several respects. He failed to respond to the state's argument that the petition was not timely filed, even though, as I've just shown, he clearly had a strong basis for contesting it. His only argument with respect to the timeliness issue was frivolous. He actually misinformed the court when he said that his client had made no effort to excuse the untimely filing. He made an error when he agreed with the state that it was untimely filed. And the only argument he made with respect to the timeliness issue was that the statute was poorly written. And he even made the nonsensical statement that the statute alone provides adequate reason for someone not to be filed, which – it just makes absolutely no sense. From the Supreme Court opinion, people – the Perkins were informed that post-condition counsel has a duty to allege any excuse for the delay in filing apparent from portions of the record. Counsel must review to present petitioner's claims. Here, Attorney Steele was not even familiar with what his own client had filed, his own affidavit, saying that the reason – Mr. Phelps thought it was untimely. And he said the reason was we were on lockdown at Menard for 16 months, all of that occurring after the – while the appellate ruling was still pending. So that was – he had filed an affidavit that would have shown lack of probable negligence, and his attorney tells the court, oh, he never filed anything like that. So that was clearly inept with respect to that. Then, after this long 16-year gestation period, he files an amended petition that is underlined by his own – something he told the court three times before, as well as by one of the affidavits attached. Thank you, Mr. Witten. You'll have an opportunity to reply. Thank you. Counsel for the appellee. Thank you. Thank you, support. Also, my name is Kathy Shepard. I represent the state. And starting out with the timeliness of the petition. The petition was untimely. The version of the statute that applies is the one that's in effect at the time of the petition. That's the 1997 statute. So there's no disagreement about which statute applies? No, there is not, Your Honor. There is disagreement, however, about whether it may be extended by a direct appeal. And there's nothing in the statute that says that, and the Supreme Court has been very clear that that is not the case. The Supreme Court in Hager and Woods has held that the term conviction in the Post-Conviction Hearing Act is a term of art, and it means conviction and sentence. And in Hager, what happened was that the defendant had his sentence vacated on a direct appeal. And at that time, he filed, when his sentence had been vacated and before he had been re-sentenced, he filed his post-conviction. So the Supreme Court in Hager said he had no conviction at the time that he filed his post-conviction petition. There's nothing in Hager that says that once a direct appeal is filed or is pending that we have to wait until the decision comes down from the appellate court. There's nothing in Hager or Woods or anything in the Supreme Court that says that the tendency of direct appeal has any effect on the timeliness of a post-conviction hearing. So defendant filed his petition pro se four days late, and that problem is something that occurred long before, of course, appointing counsel was appointed. So definitely we have a long delay in this case. There's a 16-year delay after counsel was appointed, but that is something that is a problem, but it's not something that rebuts the presumption of compliance created by the filing of the certificate that counsel had complied with, certainly alleging, well, representing to the trial court that he had complied with Rule 651C. There is no case file that defendant cites or that the state has found saying that that alone can rebut the presumption. This petition was due from the beginning because counsel or because defendant filed it untimely. So what could have saved the petition? Lack of culpable negligence. Defendant also alleges or argues that there was an actual innocence claim. There was no actual innocence claim. The claim that defendant made did not allege actual innocence. It alleged at most a groundless form of impeachment having to do with his identification and what the survival witness testified to. As to culpable negligence, defendant says that post-commissioned counsel should have alleged the prison lockdown allegations that defendant made, pro se. There is a presumption that if post-commissioned counsel does not make such a claim and does not support it in the amended petition, that he examined the basis for the claim and also made a concerted effort to find support for it. And if that was not included, then a reviewing court or the trial court considering a motion to dismiss presumes that there was no such support to be found. So that's the Supreme Court's decision in Johnson. There's nothing to rebut that presumption. The claim itself was facially meritless because defendant filed his petition only four days later. He had many supporting documents. He had many – it was a lengthy and involved petition with supporting documents that he filed. And clearly he was not hindered in doing that by a lockdown that he alleged had been in effect since whatever the date was. I think it was March 1996. And, in fact, also we can presume that post-conviction counsel investigated and determined that that lockdown was not in effect during the time that he said, or maybe there was not a lockdown, which is simply too much to assume. And it's definitely the case that we do presume that counsel did what he was supposed to do. And the fact that it took 16 years, the record shows various reasons for that delay, and the State's not arguing that that was a good thing that it took so long. But the problems with this petition were it was untimely, and defendant's claims were meritless. What could counsel have done? Even if he had taken action and filed an amended petition, whatever he would have done, with no delay, was there anything that he could have done earlier to have saved this petition? And the answer is no. And that's why, you know, we look at this delay. It's a long time. But what does it – what effect does it have in this case? It does not have – it does not rebut the presumption of compliance with the rule created by the Founder of the Certificate. Also, Closing Counsel made the point about looking at the merits of the petition. Suarez is no one from the last Supreme Case that talks about whether you look at the merits of both the petition and determining whether counsel has complied with the rule. In that case, however, counsel did not file a Rule 651C certificate. And in cases such as Profitt, the courts have said it's crucial that you look at the merits of the claims made in the petition if counsel has made – has filed such a certificate because there is that presumption of compliance. Let's see. As far as the credit issue and Wren, we just would like to make a point that there are two jurisdictional bars to granting the sentence credit the defendant wants on this appeal. One of them is containing the act, which only addresses constitutional violations, and he's been asking for it for statutory reasons. And also because there is – when you talk about correcting the minimus, as was pointed out in Morrison, the minimus is – there is no separate minimus. The minimus is the sentencing judgment. And so the sentencing judgment is beyond this court's jurisdiction to correct at this point because we're on appeal from post-conviction petition dismissal. And the Supreme Court's decision in Caballero did talk about Wren and its approach, but Caballero addressed a different statute. And in that statute, there was a specific provision at section 1-10-14 – or 1-10 – 1-10-14. And in that statute, it says that the defendant can make an application for that sentence credit at any time, or it talked about an application for the credit. And the Supreme Court in Caballero said that there was no limitation in the statute as to when that application could be made. And so therefore, the fact that it was brought on appeal from a dismissal of a post-conviction petition, that was fine. It could – the Supreme Court said that application could be made at any time, even on appeal from dismissal of a post-conviction petition. We don't have that in the statute that applies in this case. There is no such provision saying that it's on application of the defendant. Basically – well, and I could talk about the different things that counsel says do rebut the presumption. They don't, for the reason that we state in our brief. And as far as the culpable negligence allegations, we would also point out that the defendant had to meet a very low standard in order to file his pro se petition. In order for that pro se petition to advance to the second stage, all he had to do was file a petition that had an arguable basis, either in law or in fact. And so he had the majority of either 16 out of 36 months or 20 out of 36 months. I can't remember which it was, but he had an inordinate amount of time in which to file a petition that would have been sufficient. And the fact that he did file a petition with numerous and lengthy attachments rebuts the presumption that it would have made any difference, even if his prison lockdown allegations had been true. And again, we presume that counsel investigated those and determined that they were meritless. Either the lockdown didn't occur or didn't occur when it said it occurred. And also on their face, those allegations are meritless because they did not interdict the petition that he filed. So, I still have a little bit more time. I feel I should piece it all up. You don't have to. No, you don't. Thank you very much. Thank you, counsel. Reply. Thank you. Opposing counsel asked the question, well, what could Mr. Steele have done about the untimeliness issue? Well, what he could have done was realize that he could have spoken with his client, reviewed the record, realized that an affidavit asserting lack of public negligence had, in fact, been submitted by his own client, and made the best argument he could, as the Perkins court, our Supreme Court tells us in Perkins, is his duty to do. He also could have made the legal argument, like the one I did right here, correct the court on which is the applicable statute. With respect to that, it is true that in the Hager court, the appellate court had originally vacated the sentence, and the Supreme Court did look at that as one of the factors. But to fully understand the rationale in Hager, we first have to go back to Ivey. In Ivey, the appellate court held that the date of conviction triggering the three-year period under that statute had not commenced, quote, until the trial court denied defendant's amended motion to reconsider the sentence and that denial was affirmed on appeal. So even in a case where the defendant did not get the relief that he wanted, it was still not considered a final date of conviction until the appellate court had ruled. What happened in Hager was a little bit more complicated because there was a first direct appeal. The appellate court affirmed the conviction but vacated the sentence. It was remanded back for resentencing. After resentencing, he appealed it a second time, and it was affirmed by the appellate court citing to Ivey. The Supreme Court in Hager could have said Ivey was decided wrong. That was incorrect. It did not do so. Instead, what it ruled, it was that the conviction was not final until after it went back for resentencing a second time. That's when it became final, according to the Supreme Court in Hager. So I would urge the court to review this carefully. True, it didn't directly say we affirm everything said in Ivey, but it did know the rule Ivey. Ivey was pertinent to this, and if anything, it had a more liberal interpretation than the court in Ivey. Another consideration here that this court has to bear in mind is that one of Mr. Phillips' claims was ineffective assistance of appellate counsel. You can't very well draw up a petition for post-conviction relief alleging ineffective assistance of appellate counsel until the appellate court had ruled, and then you need a certain amount of time after that. Now, he didn't file and draw up the appellate court rule, but he still had a petition for leave to appeal to the Illinois Supreme Court was still pending, and it was during this period that he was on the lockdown at Menard. So when you look at those factors as well, I think that goes to both how to best interpret the 1997 China's provision of the Post-Conviction Petition Act as well as the issue of probable negligence if you even need to get there. The other point I would like to make, if I don't run out of time, is that I just wanted to conclude the point about the lack of reasonable representation. One of the things that Mr. Steele alleged in the amended petition was that trial counsel was ineffective because he failed to get the hospital records and then didn't explain why that was relevant. The only reason that would have been relevant would have been to support the original claim that the witness, Ms. Stewart, claimed that she had been shot 12 times and there was no medical evidence of that presented. Mr. Steele had actually told the court on three separate occasions, well, we got those records and they didn't show what my client thought it showed. And yet he then turns around and asserts the same, makes the same assertion in the amended petition. How is that possibly helping his client? He also alleged in the amended petition that there were these four potential witnesses that trial counsel had failed to interview. He then attaches an affidavit to that petition by his client saying, well, we didn't really know what those witnesses would have said. When, in order to demonstrate ineffective assistance to trial counsel, you have to show prejudice. So he attached an affidavit to the amended petition that underlined his own position and basically told the court something it didn't need to know that thoroughly underlined it. We ask this court please vacate the ruling of the trial court on this matter. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.